IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 9, 2019

## RONNIE INGRAM v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-01607          Chris Craft, Judge

_____

### No. W2018-01875-CCA-R3-PC
_____

The petitioner, Ronnie Ingram, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Ronnie Ingram.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Shelby County jury convicted the petitioner of aggravated burglary, theft of property valued at more than $500 but less than $1,000, criminal exposure to human immunodeficiency virus ("HIV"), evading arrest, and resisting arrest. The trial court sentenced the petitioner to 32 years plus 11 months and 29 days in confinement. On direct appeal, the petitioner solely challenged the sufficiency of the evidence supporting his conviction for criminal exposure to HIV. *State v. Ronnie Ingram*, No. W2011-02595-CCA-R3-CD, 2012 WL 5355694, at *1 (Tenn. Crim. App. Oct. 31, 2012). Following our review, this Court reversed the conviction, dismissed the charge, imposed a conviction for attempted criminal exposure to HIV in its stead, and remanded the petitioner's case for a new sentencing hearing on the reduced conviction. Upon remand, the trial court

imposed a sentence of 12 years' incarceration for attempted criminal exposure to HIV, the petitioner appealed, and we affirmed the trial court's sentence. *State v. Ronnie Ingram*, No. W2015-01527-CCA-R3-PC, 2016 WL 3977397, at *2 (Tenn. Crim. App. July 20, 2016). This Court summarized the underlying facts leading to the petitioner's convictions, as follows:

> On September 2, 2009, Memphis Police Department Officer Russell Woolley responded to the call of a "prowler" in the Annesdale Garden neighborhood of Memphis. The caller reported seeing a black male wearing black pants, a purple shirt, and a black jacket. Officer Woolley arrived to the area at approximately 2:00 a.m. and soon observed a man fitting the description, later identified as the [petitioner], carrying items to the middle of the street from a nearby yard. When the [petitioner] walked back to the yard, Officer Woolley alerted nearby officers of a burglary in progress and walked to inspect the items in the street. He then observed lawn equipment and a "musical machine" among the items.

> Officer Woolley recalled that an approaching squad car "spooked" the [petitioner] as he returned to the street, and the [petitioner] began running. In fleeing, the [petitioner] ran directly toward Officer Woolley, who ordered the [petitioner] to the ground. The [petitioner] did not heed Officer Woolley's commands and instead ran in another direction away from the officers. Officer Woolley gave chase through several yards, ultimately ending up in the back yard of a nearby residence. Throughout the pursuit, Officer Woolley identified himself as a police officer and commanded the [petitioner] to the ground.

> Once in the back yard, Officer Woolley stepped into knee-high water, observed the [petitioner's] jacket floating in the water, and immediately tripped over the [petitioner], who was lying in the water. Officer Woolley testified that the [petitioner] began grabbing his ankles and hands. Officer Woolley feared the [petitioner] was reaching for either of his two service weapons--one at his ankle and one at his waist. Officer Woolley began "striking . . . [the petitioner] with a closed fist" in an effort to subdue the [petitioner]. He then separated from the [petitioner] to move away to a more open and safe vantage point in the back yard.

> Officer Woolley testified that Officer Tracy McDonald soon arrived with her police dog named Alex. The leashed dog immediately began tracking the [petitioner's] scent and located the [petitioner]. After a struggle between the leashed dog and the [petitioner], the [petitioner]

yielded. Officer Woolley then handcuffed the [petitioner] as Officer McDonald returned the dog to her squad car.

Officer Woolley testified that the [petitioner] "was bleeding pretty bad[ly] from the face, from his head around his eyes, and like around the cheek area." He said, "[A]s I was walking [the petitioner] back to the roadway[,] right before we got to it he turned towards me and he spit in my face." Officer Woolley testified that the [petitioner] then told him that he was infected with HIV. Officer Woolley testified that the [petitioner's] saliva went into his mouth, eyes, and nose. Soon after, as Officer McDonald approached Officer Woolley's squad car, the [petitioner] told Officer McDonald, "I've got AIDS or I have HIV. I hope your dog gets AIDS." The [petitioner] then "tried to spit in [Officer McDonald's] direction," but the officers were "able to slam the car door quick[ly] enough where nobody else could be contaminated."

After calming down in the back seat of the squad car for a few minutes, the [petitioner] volunteered to direct Officer Woolley to the residence from which he had stolen the items. Officer Woolley testified that the [petitioner] said, "'[H]ey, I'll show you where I got it from, it ain't nothing but a burglary.'" After going to the residence, Officer Woolley transferred custody of the [petitioner] to another officer and went to the hospital to have his eyes, nose, and mouth flushed. In the year following the incident, Officer Woolley underwent periodic blood tests to determine whether he had contracted HIV.

Officer Tracy McDonald testified that she was trained as a "Police K-9 Handler" and that her dog, Alex, assisted in apprehending the [petitioner] on September 2, 2009. She recalled that Alex began "pulling strong" toward a flooded area in a back yard. She said that the dog remained on a leash throughout the search for and apprehension of the [petitioner]. She said, "Once I heard the screaming and I knew Alex made contact . . . I told the suspect let me see your hands and the dog will be removed." She explained that the dog was trained to "latch on" until commanded to release. Despite the leashed dog's biting the [petitioner] on the head, the [petitioner] continued to struggle. He grabbed Officer McDonald around the waist in an effort to remove her gun from her gun belt. Ultimately, the [petitioner] relented, and Officer McDonald commanded Alex to release his hold on the [petitioner]. Officer Woolley handcuffed the [petitioner] while Officer McDonald returned Alex to her squad car. Because the [petitioner] had suffered injuries during his

apprehension, Officer McDonald attempted to take photographs at the scene. The [petitioner] did not cooperate with Officer McDonald's request to document his injuries. Officer McDonald testified that the [petitioner] told her that he had AIDS and that her dog was going to die. She recalled that the [petitioner] was "cursing very loud[ly]" throughout the incident.

George Todd testified that police officers woke him up sometime after 1:00 a.m. on September 2, 2009, to ask if his home had been burglarized. After inspecting an adjacent garage-apartment, he discovered that small tools, a weed eater, and a cymbal bag had been stolen. He identified the items found in the street as those taken from his residence. He said that the [petitioner] did not have permission to enter his home or take the items. He estimated their value at "about $1,000."

The parties stipulated the authenticity and accuracy of medical records showing that the [petitioner] had HIV. The State then rested its case-in-chief. Following the trial court's denial of the [petitioner's] motion for judgment of acquittal, the [petitioner] testified.

The [petitioner] testified at trial, claiming that Officer Woolley arrested him at a bus stop, placed him in handcuffs, and then took him to an isolated area where Officer Woolley and several other officers beat him. The [petitioner] said, "He told me if I don't plead guilty to these charges they were going to sic the dog back on me, but it was a beating happened between him and three more officers before the dog got there." The [petitioner] claimed that "[Officer McDonald] came over and stood over top of [the petitioner] shaking her butt[,] that's when the dog engaged [the petitioner] while [he] was already handcuffed." After this assault, the [petitioner] claimed Officer McDonald said "'good boy'" to the dog.

The [petitioner] explained that he had trouble breathing following the beating and dog attack. He testified that he inadvertently coughed saliva and mucus onto Officer Woolley's chest. He claimed that he repeatedly warned the officers of his HIV status throughout the incident and apologized to Officer Woolley for coughing on his chest. He admitted learning of his HIV infection while incarcerated in 1995. The [petitioner] denied any involvement in the burglary of the Todd residence. He claimed he was apprehended by the police, attacked, and beaten for no reason.

*Ronnie Ingram*, 2012 WL 5355694, at *1-3 (internal footnote omitted).

- 4 -

The petitioner filed a pro se petition for post-conviction relief on June 4, 2013. After the appointment of counsel, he filed an amended petition on November 4, 2014, which the trial court stayed until the petitioner's direct appeal was resolved on July 20, 2016. The petitioner then filed a second amended petition on October 10, 2017, wherein he argued he received the ineffective assistance of counsel at trial and on appeal.[1] The petitioner alleged trial counsel failed to: object to speculative and conclusory testimony of Officer Woolley; request the State to elect the offense upon which it relied for the charges of evading arrest and resisting official detention; and file a motion to suppress the petitioner's statement made while in Officer Woolley's police car. The petitioner further alleged trial counsel erred in filing a motion in limine to exclude testimony about the petitioner's familiarity with the arresting officers "based on prior run-ins with them," asserting this testimony would have bolstered his "credibility with the jurors." Separately, the petitioner argued the State's failure to elect rendered his trial unfair and violated due process and appellate counsel was later ineffective for not challenging the State's failure to elect on appeal.

At the post-conviction hearing, trial counsel stated the proof at trial established the petitioner was found in a neighborhood with property connected to a burglary and when confronted by police, the petitioner ran. Trial counsel recalled several officers were involved in arresting the petitioner. He noted two interactions between the petitioner and Officer Woolley that supported the evading arrest charge, including the petitioner's failure to follow Officer Woolley's command to stop and the petitioner's attempt to grab Officer Woolley's weapon while the petitioner hid after fleeing. Despite these facts, trial counsel did not request, and the trial court did not require, the State to make an election of offenses for the charges of evading arrest or resisting official detention. Trial counsel believed the proof supporting the evading arrest conviction was strong. Though he did not know what facts the jury relied on in reaching its verdict, trial counsel did not believe the State's failure to elect affected the jury's verdict. He did not recall if the trial court provided a jury instruction on election.

Trial counsel also addressed the fact that he did not file a motion to suppress the statement the petitioner made while detained in the back of Officer Woolley's police car. In reference to the property found on the scene, trial counsel explained, "Officer Woolley said something to the effect of, 'That stuff,' or something about, 'Where did you get it,' or 'Is that your stuff we saw you with,' something to that effect." In response, the petitioner stated, "'It's not my stuff,' but then, according to Officer Woolley, [the petitioner] said, 'I can show where I got it.'" Trial counsel noted "there probably should have been a motion to suppress done on [the petitioner's statement]" but at the time of

---

[1] Before the filing of the second amended petition, the trial court appointed new post-conviction counsel after the death of original counsel.

trial, his "impression of [the statement] was that it was like a spontaneous utterance." Trial counsel believed he would have filed a motion to suppress the statement if it had been warranted by the discovery. Regardless, trial counsel did not believe the suppression issue affected the outcome of the trial based upon the strength of the State's case.

Neither the petitioner nor appellate counsel testified at the hearing. After its review of the evidence presented, the post-conviction court denied the petition, finding the petitioner failed to carry his burden of proof to show the ineffective assistance of counsel. The petitioner timely appealed.

*Analysis*

On appeal, the petitioner asserts the outcome of his trial would have been different absent the deficiencies of trial counsel. The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *See id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The petitioner argues trial counsel was ineffective for failing to require an election of offenses for the charges of evading arrest and resisting official detention which the petitioner asserts violated due process and rendered his trial unfair. At the post-conviction hearing, trial counsel stated he did not request an election as to the facts upon which the State relied for the charges of evading arrest and resisting official detention and he did not think the State's failure to elect affected the outcome of the petitioner's trial. Citing *State v. Adams*, the post-conviction court determined election was not warranted as "the indicted counts of evading arrest and resisting official detention, given the facts of this case, were continuing offenses, and that there was no danger to the petitioner of being convicted by a non-unanimous jury verdict." 24 S.W.3d 289, 294 (Tenn. 2000) (noting election is not necessary when the evidence establishes the accused has committed a continuing offense which "generally stem[s] from a single motivation or scheme, although such offenses can be committed by multiple discrete acts occurring over a period of time"). Upon our review of the record and pertinent authorities, we agree with the post-conviction court. Nothing in the record suggests election was required, and the petitioner has failed to present any evidence to show otherwise. Because the law does not require the State to make an election here, the petitioner cannot

establish trial counsel was deficient or that he was prejudiced by trial counsel's failure to require election. *Strickland*, 466 U.S. at 694. The petitioner is not entitled to relief as to this issue.

The petitioner next asserts trial counsel was ineffective for failing to file a motion to suppress the statement he made to Officer Woolley. Trial counsel explained he did not think it was necessary to file a motion to suppress because he believed the petitioner's statement was spontaneous. In hindsight, trial counsel stated his best practice would be to file a suppression motion "to see how [the statement] came about." Upon its review, the post-conviction court noted, "this suppression issue was never developed prior to, during or after the trial in this cause, [and] this court cannot find that the statement would have been suppressed." The post-conviction court went on to note that even if the statement had been suppressed, "this court finds that the proof of the petitioner's guilt was so overwhelming that it would not have made a difference in the petitioner's trial." Again, we agree with the post-conviction court as the petitioner has failed to present proof to support this claim and nothing in the record preponderates against the post-conviction court's finding of fact on this issue. *See Tidwell*, 922 S.W.2d at 500; *Henley*, 960 S.W.2d at 578. Accordingly, we will not disturb its findings on appeal, and the petitioner is not entitled to relief.

Finally, the petitioner requests a reduction of the sentence imposed for his theft conviction, arguing the conviction is now classified as an A misdemeanor rather than a felony. The petitioner's blanket request for a reduction in his sentence, however, is not supported by citations to authority or the record. Absent "citations to the authorities and appropriate references to the record," this issue is waived. Tenn. R. App. P. 27. Furthermore, the claim is inappropriate for post-conviction review, and we decline to extend any relief. Tenn. Code Ann. § 40-30-103.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE